UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIANMIN GUAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CHANGKUN BI, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-05537-WHO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 12 |

**INTRODUCTION**

Plaintiffs Xianmin Guan, a citizen of the People Republic of China ("PRC"), and Wang Ying, a United States citizen living in Fremont, California, brought this action against defendants Changkun Bi, Zheng Bi, Xiuxia Xiao, Xuetao Zhao, and Deshun Sun—all citizens of the PRC— and the Dalian Customs Anti-Smuggling Bureau, a local governmental department of the PRC. Zheng Bi, who lives in Oakland, California, is only defendant who has appeared. He removed the action to this Court and the plaintiffs move to remand. I am asked to decide whether I have jurisdiction over this case either on diversity grounds or under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Because none of the defendants is a United States citizen, there is no diversity, and because the Dalian Customs Anti-Smuggling Bureau has not appeared nor sought removal, the FSIA does not apply. For those reasons, the motion to remand is GRANTED.[1]

**BACKGROUND**

**I.　FACTUAL BACKGROUND**

The First Amended Complaint ("FAC") alleges that the defendants conspired to extort

---

[1] The plaintiffs also request attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). For the reasons discussed at the end of this Order, that request is DENIED.

millions of dollars from the plaintiffs using "threats of death, physical harm, financial ruin, harassment, kidnapping, torture, false imprisonment, assault, battery and false prosecution." FAC (Dkt. No 1) ¶ 1.  The FAC's allegations are quite spectacular, but they will not be recounted here since they do not bear on the motion to remand.  The critical jurisdictional facts alleged by the plaintiffs are as follows.

Plaintiff Guan Xianmin ("Guan") is a citizen of the PRC and currently lives in the United States.  FAC ¶ 10.  Guan owns businesses in both the United States and China.  FAC ¶ 10. Plaintiff Wang Ying ("Wang"), Guan's wife, is a United States citizen.  FAC ¶ 11.  Both currently live in Fremont, California, and also in Newark, Delaware.  FAC ¶¶ 10, 11.

Defendant Changkun Bi currently lives in Dalian Province, PRC.  FAC ¶ 12.  Changkun Bi's son, defendant Zheng Bi ("Bi"), currently lives in Oakland, California, and, on information and belief, resides in the United States through a student visa for his studies at California State University, East Bay.  FAC ¶ 13.  Defendant Xiuxia Xiao is a Chinese national currently living in the PRC and Guan's ex-employee.  FAC ¶ 14.  Defendant Dalian Customs Anti-Smuggling Bureau ("DCAB") is a local governmental department of the PRC.  FAC ¶ 18.  Defendant Deshun Sun currently lives in the PRC and is the Deputy Director of the DCAB.  FAC ¶ 16.  Defendant Xuetao Zhao is a DCAB official, Chinese national, and currently lives in the PRC.  FAC ¶ 15. Several unnamed DCAB officials and Chinese nationals, upon information and belief, are co-conspirators.  FAC ¶¶ 19-22.

The plaintiffs filed their Complaint in the Superior Court of California, County of Alameda, on August 16, 2013, and filed the FAC on September 10, 2013.  FAC 1, 24.  The plaintiffs served Bi on October 30, 2013.  Chao Decl. (Dkt. No. 13) ¶ 3.  None of the other defendants have been served or appeared.[2]  Bi removed the action to federal court on November 28, 2013.  Notice of Removal (Dkt. No. 1) 1-2.  On December 30, 2013, the plaintiffs filed this

---

[2] The plaintiffs state that the other defendants are located in the PRC and must be served pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("the Hague Convention").  Chao Decl. ¶ 12.  The plaintiffs contend they cannot send Hague Convention Requests for Service while the forum for this action is unsettled. Chao Decl. ¶ 13.

1    motion to remand. Dkt. No. 12.

## LEGAL STANDARD

A plaintiff may bring a motion to remand to challenge removal of an action to federal court either for lack of subject matter jurisdiction or a defect in the removal procedure. 28 U.S.C. § 1447(c). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (noting that "federal courts [must] scrupulously confine their own jurisdiction to the precise limits which the statute has defined") (citation and internal quotation marks omitted). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

## DISCUSSION

Bi removed this action from state court to federal court pursuant to 28 U.S.C. section 1441, which allows removal of actions that could have been filed in federal court.[3] *See* Notice of Removal 1-2. Bi's Notice of Removal asserts that removal is proper under sections 1332(a), the diversity jurisdiction statute, and 1446(b). *Id.* After removing the action, Bi also argued that I have jurisdiction pursuant to both FSIA, specifically section 1330(a), and section 1441(a). *See* Opp'n (Dkt. No. 16) 4.[4]

In their motion to remand, plaintiffs argue that under recent amendments to section 1332 and Ninth Circuit precedent there is no diversity jurisdiction where, as here, an action involves an alien and a United States citizen on one side, and all aliens on the other side, even if the alien on the same side as the United States citizen is a permanent resident of the United States. Br. (Dkt. No. 12) 6. Bi, in contrast, argues that the amendments are inapplicable here because the lone United States citizen (Wang) is on the same side as the lone permanent resident alien (Guan), and

---

[3] Throughout this Order, all section references are to Title 28 of the United States Code.
[4] The plaintiffs argue that Ninth Circuit law prohibits adding a separate basis for removal after the 30-day period for removing an action. Reply (Dkt. No. 17) 7 (quoting *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of Mont.*, 213 F.3d 1108, 1117 (9th Cir. 2000)). Because I conclude that the FSIA is inapplicable, there is no need to address this issue.

their suit is against all aliens that are not permanent residents of the United States. Opp'n 3.[5] In addition, the plaintiffs argue that removal based on a combination of section 1441(a) and the FSIA is improper because section 1441(d) is the exclusive means to remove an action against a foreign state to federal court, and only the foreign state itself may remove using section 1441(d). Br. 7-9. Because no statute provides me with subject matter jurisdiction for this case, the plaintiffs' motion to remand to state court is GRANTED.

## I. SUBJECT MATTER JURISDICTION

### A. Diversity Jurisdiction

United States district courts have original jurisdiction over all civil actions in which the amount in controversy requirement is satisfied and the case is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Complete diversity is required, meaning that the diversity statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). To provide context for the issues raised by this motion, I will review the history of the diversity jurisdiction statute and its amendments.

#### 1. The 2011 Amendment to Section 1332

Before 1988, the diversity statute provided jurisdiction over a suit between a foreign citizen living abroad and a United States citizen. *See* § 1332(a)(2). However, foreign citizens who resided in the United States did not qualify as United States citizens for diversity purposes, leading to "the odd situation that a [federal] court would have jurisdiction over a suit between a United States citizen and a foreign citizen residing in the same state." *See H.K. Huilin Int'l Trade Co., Ltd. v. Kevin Multiline Polymer Inc.*, 907 F. Supp. 2d 284, 286 (E.D.N.Y. 2012). This was often referred to as the "suits between neighbors" problem. *Id.*

---

[5] Bi also suggests Guan should be treated as a United States citizen for diversity jurisdiction purposes because his immigration status is unclear. Opp'n 3 n.4. The FAC states Guan had a green card that expired during his incarceration, forcing him to reapply for an L-1 Visa. FAC ¶ 59. The FAC also states Guan is a PRC citizen currently living in California. FAC ¶ 10. I accept the facts as pleaded in the FAC and there is no allegation that Guan is a United States citizen. My conclusion is the same whether Guan is a permanent resident alien or in the United States under a temporary L-1 Visa.

United States District Court
Northern District of California

To address the "suits among neighbors" problem, Congress amended section 1332(a) in 1988 to add the following proviso: "For the purposes of this section . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Judicial Improvements and Access to Justice Act of 1988, § 203(a), Pub. L. 100-702, 102 Stat. 4642 ("1988 amendment"). The purpose of this addition was to destroy diversity of citizenship where American citizens and permanent resident aliens domiciled in the same state are adverse parties. *See* 13E CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3604 (3d ed. 2013); *see also Van Der Steen v. Sygen Int'l, PLC*, 464 F. Supp. 2d 931, 935 (N.D. Cal. 2006) (Breyer, J.) (stating that "courts have concluded that the *only* indication of congressional purpose in the legislative history is that Congress' intent in passing the 1988 Amendment was to eliminate so-called 'suits between neighbors'").

The United States Constitution provides that the judicial power of federal courts extends to cases and controversies between United States citizens "and foreign states, citizens or subjects." U.S. CONST., art. III, § 2. Article III places limits on Congress' power to confer jurisdiction based on diversity of citizenship. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 496 (1983) (citing *Mossman v. Higginson*, 4 U.S. 12, 14 (1800), for the proposition that "a statute purporting to confer jurisdiction over actions 'where an alien is a party' would exceed the scope of Article III if construed to allow an action solely between two aliens"). Thus, "the legislative power of conferring jurisdiction to the federal Courts is . . . confined to suits between *citizens and foreigners*." *Mossman*, 4 U.S. at 14; *see also Hodgson v. Bowerbank*, 9 U.S. (5 Cranch) 303 (1809) (deciding that Congress would go beyond the permissible bounds of Article III if it gave federal courts jurisdiction "in all suits in which an alien is a party") (citation omitted). By implication, an alien may not sue another alien in federal court. *See Singh v. Daimler-Benz AG*, 9 F.3d 303, 305 (3d Cir. 1993) ("the statute now does not expressly provide that one alien may sue another in federal court"); *Lloyds Bank PLC v. Norkin*, 817 F. Supp. 414, 416 (S.D.N.Y. 1993).

A literal reading of the 1988 amendment could unconstitutionally create federal diversity jurisdiction over a lawsuit brought by one alien against another alien without a United States citizen on either side of the litigation. *See Saadeh v. Farouki*, 107 F.3d 52, 58 (D.C. Cir. 1997);

5

*Lloyds Bank*, 817 F. Supp. at 416. So read, an alien residing in one state would be able to sue an alien residing in another state. For example, "a citizen of France permanently residing in Massachusetts in theory could bring a suit in a federal court against a citizen of Great Britain permanently residing in Texas." 13E WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 3604.

The D.C. Circuit in *Saadeh v. Farouki*, avoiding the constitutional question, looked only to the statute and held that Congress intended that the 1988 amendment reduce the exercise of diversity jurisdiction and "did not confer diversity jurisdiction over a lawsuit between an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens." 107 F.3d at 61.

The Third Circuit, however, reached the opposite conclusion in *Singh v. Daimler-Benz AG*, 9 F.3d at 312. In *Singh*, the court found that legislative history was not an "overriding reason" to depart from the 1988 amendment's plain language and upheld diversity jurisdiction where a permanent resident alien living in Virginia sued an alien and a citizen of Delaware and New Jersey. *Id.* at 309, 312. The "alleged constitutional issue that might arise when one alien sues another" was not presented because the presence of a United States citizen party satisfied minimal diversity. *Id.* at 312.

The Seventh Circuit reached a middle ground, holding that permanent resident aliens were considered citizens of both their foreign nation and state of domicile. *See Intec USA, LLC v. Engle*, 467 F.3d 1038, 1043-44 (7th Cir. 2006).

In 2011, Congress again amended section 1332(a) and eliminated the language in section 1332(a)(2) stating that a permanent resident alien is deemed a citizen of the state in which he or she is domiciled, but added language directly addressing the "suits among neighbors" problem. Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 101, 125 Stat. 758 (2011) ("2011 amendment"). Section 1332(a)(2) now provides that diversity jurisdiction exists between:

> citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State.

28 U.S.C. § 1332(a)(2). The 2011 amendment "eliminates the arguable basis for expansion of alienage jurisdiction to minimum diversity cases when the configuration of parties would not otherwise support diversity jurisdiction under section 1332, overruling the view previously adopted by the Third Circuit" in *Singh*. *See* 13E WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 3604.

The House Report accompanying the 2011 amendment expressly criticizes *Singh* and similar decisions that broadened the scope of diversity jurisdiction, stating that these courts expanded federal jurisdiction when Congress meant to reduce it. *See* H.R. REP. NO. 112-10 (2011), *available at* 2011 WL 484052, at *7. After discussing *Singh*, the House Report states:

> To correct the problem, section 101 eliminates the resident alien proviso and its deeming feature altogether, along with its potential for jurisdictional expansion. By eliminating the proviso, resident aliens would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction, thereby avoiding the possibly anomalous results under paragraphs 1332(a)(1)-(3). In place of the proviso, section 101 . . . would thus achieve the goal of modestly restricting jurisdiction, which Congress sought to accomplish when it first enacted the resident alien proviso, and would avoid the threat of the expansion of jurisdiction now posed by the proviso.

*Id.* Very few courts have addressed the meaning of the diversity jurisdiction statute with the aid of the 2011 amendment. *See H.K. Huilin*, 907 F. Supp. 2d at 289 n.5.[6]

Even prior to the 2011 amendment, however, the Ninth Circuit held in *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990-91 (9th Cir. 1994), that "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants," including actions between a United States citizen and an alien on one side and all aliens on the other side. The presence of a United States citizen in such an action "does not salvage jurisdiction because diversity must be complete." *Id.* (citing *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989)). *Nike* was careful to note that complete diversity may exist in cases with aliens on both sides of the litigation under section 1332(a)(3) so long as there are "citizens of [the] United States on both sides who satisfy diversity requirements." *Id.* (citing *Transure, Inc. v.*

---

[6] No court in the Ninth Circuit has directly addressed the 2011 amendment's effect on the diversity jurisdiction issues raised here.

1   *Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298-99 (9th Cir. 1985)).

### 2. Analysis

The plaintiffs argue that I lack diversity jurisdiction under section 1332(a)(2) because Guan's PRC citizenship destroys complete diversity. Br. 6. They contend that Ninth Circuit law holds that there is no diversity jurisdiction where a lawsuit involves an alien and a United States citizen on one side and all aliens on the other side. *Id.* (citing *Nike*, 20 F.3d at 990-91)). The plaintiffs argue the 2011 amendments to section 1332(a)(2) "clarify that permanent resident aliens are not deemed 'citizens' for diversity jurisdiction purposes." *Id.* at 6-7 (citing H.R. REP. NO. 112-10, *available at* 2011 WL 484052, at *7 ("By eliminating the proviso, resident aliens would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction . . . .")). Therefore, the case should be remanded.

Bi does not address *Nike*, but argues that the 2011 amendment supports the exercise of diversity jurisdiction. *See* Opp'n 3-4. The 2011 amendment, he asserts, was meant only "to avoid the use of diversity jurisdiction in situations beyond that which had been contemplated when the omitted proviso was enacted in 1988." *Id.* at 3 (citing H.R. REP. NO. 112-10, 2011 WL 484052, at *7). According to Bi, the only situation barred by the 2011 amendment is "cases involving 'citizens of a State' on one side and 'citizens or subjects of a foreign state who are lawfully admitted for permanent residence' on the other," i.e., the "neighbors suing neighbors" problem. *Id.* Therefore, the 2011 amendment does not bar this action because a United States citizen and a permanent resident alien from the same state are not on opposing sides; the only United States citizen is on the same side as the only permanent resident alien. *Id.* at 4. Accordingly, Guan's residency should govern for diversity jurisdiction purposes, meaning this case is equivalent to two California citizens suing aliens, which falls under section 1332. *Id.* (citing *Transure*, 766 F.2d at 1299).

Bi is mistaken. Guan is a PRC citizen currently living in California and Wang is a United States citizen living in California. FAC ¶¶ 10-11. All of the defendants are foreign residents either living in the PRC or the United States for a limited purpose. *See* FAC ¶¶ 12-18. In an effort to avoid the increased exercise of diversity jurisdiction, the 2011 amendment eliminated language

stating that a permanent resident is deemed a citizen of the state in which he is domiciled. Analyzed properly, this case involves an alien and a United States citizen on one side and aliens on the other side. There is no complete diversity of citizenship and, without an independent ground for jurisdiction, I cannot hear this case. *See Nike*, 20 F.3d at 990-91.

This factual scenario is almost identical to the one in *Singh*, a decision directly criticized by the House Report accompanying the 2011 amendment.[7] To find jurisdiction would go against Congress' clear intention. Bi is correct that the addition of language to address the "suits among neighbors" problem indicates an intention by Congress to avoid the exercise of diversity jurisdiction beyond the circumstances encompassed by the 1988 amendment. However, Congress also deleted the only language in section 1332(a)(2) that would support Bi's argument that Guan should be considered a United States citizen even though he is not a United States citizen. Section 1332(a)(2) now provides no circumstance in which a permanent resident alien should be "deemed" a United States citizen because Congress enacted the 1988 amendment to avoid "its potential for jurisdictional expansion." *See* H.R. NO. 112-10, 2011 WL 484052, at *7. I decline to expand diversity jurisdiction on the basis of language deleted by Congress, especially where Congress accompanied this deletion with instructions to not use a permanent resident alien's residency as a basis for expanding jurisdiction. The 2011 amendment precludes the exercise diversity jurisdiction in this case.

Bi's removal under section 1441(a), predicated on diversity jurisdiction, was improper. He alternatively argues that the FSIA provides a basis for jurisdiction here, but under these facts he is wrong for the reasons discussed below.

**B. Removal under the FSIA**

Under the FSIA, federal courts "have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state." 28 U.S.C. § 1330(a). The FSIA

---

[7] Bi references the House Report's criticism of *Singh* in his Opposition, but it is unclear how this reference supports his argument. Opp'n 3. The only apparent distinction between this case and *Singh* is that here, the United States citizen and permanent resident alien are plaintiffs, whereas in *Singh*, the United States citizen and permanent resident alien were defendants. *See Singh*, 9 F.3d at 312. This distinction has no bearing on Congress' caution to not use a permanent resident alien's residency as a basis for expansion of diversity jurisdiction to diversity cases.

provides that any civil action brought in state court against a foreign state "may be removed by the foreign state to" federal court. 28 U.S.C. § 1441(d). Before addressing the parties' arguments, I will review the history and policy rationale of the FSIA.

### 1. The FSIA is designed to give foreign states sued in the United States the ability to remove the action.

Historically, foreign states were generally afforded complete immunity from suit in courts in the United States. *Verlinden*, 461 U.S. at 486. The Supreme Court consistently deferred to the political branches, particularly the State Department, on matters of sovereign immunity. *Id.* However, this system became unworkable because of inconsistencies in the State Department's decisions about whether to grant immunity and the frequent failure of foreign states to request immunity. *Id.* at 488. "In an effort to free the government from diplomatic pressures and to create a uniform set of standards for making foreign immunity determinations, Congress enacted the [FSIA]." *Martinez v. Republic of Cuba*, 708 F. Supp. 2d 1298, 1301 (S.D. Fla. 2010) (citing *Verlinden*, 461 U.S. at 488).

The House Report accompanying the FSIA explains that "[i]n view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts." H.R. REP. NO. 94-1487, *available at* 1976 WL 14078, at *32. The Supreme Court instructed that the FSIA "must be applied by the District Courts in every action against a foreign sovereign, since subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Verlinden*, 461 U.S. at 493.

A "principal purpose" of the FSIA is "to transfer the determination of sovereign immunity from the executive branch to the judicial branch, thereby reducing the foreign policy implication of immunity determinations and assuring litigants that these often crucial decisions are made on purely legal grounds and under procedures that insure due process." *See Ruggiero v. Compania Peruana de Vapores Inca Capac Yupanqui*, 639 F.2d 872, 877 (2d Cir. 1981) (citation omitted). However, the FSIA does not require that every action against a foreign state be in federal court.

Rather, the FSIA "expressly provides that its standards control in the courts of the United States and of the States, and thus clearly contemplates that such suits may be brought in either federal or state courts." *Verlinden*, 461 U.S. at 489 (citation and internal quotation marks omitted). A recent federal district court opinion explains that "in enacting the FSIA, Congress did not intend that all cases against a foreign state be in federal court; it merely gave foreign states the right to decide." *Martinez*, 708 F. Supp. 2d at 1301.

### 2. Subject matter jurisdiction and removal under the FSIA

Section 1330 of the FSIA provides that federal courts "shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state." Section 1441(d) "governs removal of actions against foreign states," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473 (2003), and provides that:

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury.

28 U.S.C. § 1441(d).

Although it has not yet defined the precise scope of the FSIA's removal provision, the Ninth Circuit held that the FSIA "provides the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities." *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 639 (9th Cir. 2003). In *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1407-08 (9th Cir. 1989), the Ninth Circuit decided whether a foreign state could remove the entire action and create jurisdiction over pendent parties even though inclusion of those parties destroyed complete diversity. The court explained that "[o]rdinarily, a case may not be removed (1) if any defendant objects, or (2) in cases where jurisdiction is founded on diversity of citizenship, if any defendant is a citizen of the state in which the action was brought. Under the FSIA, these restrictions do not apply." *Id.* at 1409 (internal citations omitted). As one judge in this district stated, "Congress specifically drafted § 1441(d) to exempt foreign sovereigns from some generally applicable rules of removal." *See Envtl. World Watch, Inc. v. Am. Airlines, Inc.*, No. 05-cv-1799-TEH, 2005 WL 1867728, at *2 (N.D. Cal. Aug. 3, 2005) (citing *Teledyne*, 892

11

F.2d at 1409)).

The FSIA's removal provision applies only to foreign states, not individual, non-sovereign defendants. In *Martinez v. Republic of Cuba*, the plaintiff obtained a state court judgment against the Cuban government. 708 F. Supp. 2d at 1300. Cuba had not responded to the complaint and default judgment was entered. *Id.* The state court then issued writs of garnishment against several non-sovereign defendants—South Florida companies that charter flights from Cuba—and charged them with answering whether they were indebted to Cuba. *Id.* at 1299. The garnishees removed the state court garnishment action to the United States District Court for the Southern District of Florida. *Id.*

The central issue in *Martinez* was whether the non-sovereign defendants could remove the action to federal court even though Cuba had not appeared in the action. *Id.* at 1301. The defendants argued that the court had federal jurisdiction under section 1331, which confers original jurisdiction over any claim arising under the Constitution, treaties, or laws of the United States, and section 1330, which confers original jurisdiction over "any nonjury civil action against a foreign state." *See id.* at 1301-02. The plaintiff countered that section 1441(d) is the exclusive basis for removal in actions against foreign states and, because that provision allows only a foreign state to remove, the non-sovereign defendants' removal was improper. *Id.* at 1302.

The court agreed with the plaintiffs, reasoning that section 1441(d) would be "superfluous" if it "were not the sole avenue for removal in actions against foreign states" because section 1441(a) and (b) would always allow any defendant to remove an action against a foreign state. *See id.* The court refused to interpret § 1441(d) as "mere surplusage." *See id.* (citing *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). The court held that the only logical construction is that section 1441(d) was the exclusive basis for removal in actions against foreign states. *Id.* (citing *Dole Food*, 538 U.S. at 473). Although *Martinez* is not binding on this court, its reasoning is persuasive and consistent with the conclusion of another judge in this district twelve years earlier that "[section] 1441(d) specifies that an action may be removed only 'by the foreign state,' not by other named defendants." *Triton Container Int'l Ltd. v. Inst. of London Underwriters*, No. 98-cv-0573-TEH, 1998 WL 750941, at *5 (N.D. Cal. Apr. 1, 1998).

12

### 3. Analysis

The plaintiffs argue that removal under section 1441(d) and a combination of sections 1330(a) and 1441(a) is improper. Br. 7-9. First, they maintain that section 1441(d) applies only to foreign states and does not allow a non-sovereign defendant to remove an action against a foreign state. Br. 7-8 (citing *Triton*, 1998 WL 750941, at *5). Second, they argue that removal using a combination of sections 1441(a) and 1330(a) is improper. Br. 8-9. The plaintiffs further assert that diversity jurisdiction is the exclusive way a federal court can exercise jurisdiction over a foreign citizen as opposed to a foreign sovereign. Br. 8 (citing *EIE Guam*, 322 F.3d at 647).

Bi, in contrast, argues section 1441(a) allows removal because of "the minimal diversity of the parties and [section] 1330(a)." Opp'n 5 (citing *Teledyne*, 892 F.2d at 1408; *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, No. 05-cv-411, 2010 WL 1286364 (E.D. Wash. Mar. 29, 2010)). Bi maintains that the constitutionally satisfactory minimal diversity of the parties here, in conjunction with section 1330(a), is sufficient to confer federal subject matter jurisdiction over claims against non-sovereign defendants and allow any defendant to remove under section 1441(a). Opp'n 5 (citing *Teledyne*, 892 F.2d at 1408-09)). Moreover, Bi argues that "[n]othing in the language of [section] 1441(d) . . . purports to limit the scope of [section] 1441(a)," and *EIE Guam* "did not purport to address the scope of removal jurisdiction for non-sovereign defendants under [section] 1441(a)." Opp'n 5 n.5, 7. Therefore, according to Bi, removal was proper because section 1441(a) allows "any or all of the non-government defendants" to remove the action and, because he was the only defendant served at the time of removal, "the concurrence of the other defendants was not required." Opp'n 6.

*Teledyne* and *Teck Metals* are distinguishable. In both cases, a foreign sovereign, rather than a non-sovereign defendant, removed the action using section 1441(d). Minimal diversity applies in this context only "if a foreign sovereign removes an action under [section] 1441(d)." *Teledyne*, 892 F.2d at 1407-08; *Teck Metals*, 2010 WL 1286364, at *1-2.

As the plaintiffs argue, "[section] 1330(a) and its counterpart dealing with removal, [section] 1441(d), are the sole source of a district court's jurisdiction over a civil action against a

13

foreign state as defined by the FSIA." *See* Br. 8-9 (quoting *Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 349 (7th Cir. 2007)). The plaintiffs cite several other cases to support this point. *See* Br. 9 (citing *Dole Food*, 538 U.S. at 473; *Ruggiero*, 639 F.2d at 878; *Williams v. Shipping Corp. of India*, 653 F.2d 875, 881 (4th Cir. 1981)). As the court wrote in *Martinez*, section 1441(d) would be "superfluous" if it were not the sole avenue for removal in actions against foreign states. *Martinez*, 708 F. Supp. 2d at 1302.

Bi argues that the cases referenced above are not dispositive of a non-sovereign defendant's ability to remove under section 1441(a). Opp'n 7. He asserts that *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.* answered only whether a private party's purchase of a foreign state's instrumentality altered the plaintiffs' right to a trial by jury where the foreign state previously removed the action under section 1441(d). Opp'n 7 (citing *Olympia Exp.*, 509 F.3d at 349). Bi claims that *Martinez* is inapposite because the parties there were not minimally diverse and the non-sovereign defendants made an argument different than Bi's argument here, i.e., that the presence of a foreign state defendant alone created federal question jurisdiction. Opp'n 7-8 (citing *Martinez*, 708 F. Supp. 2d at 1302)). Finally, he contends that if section 1441(d) is the exclusive way to obtain jurisdiction over an action against a foreign state, a federal court would not have subject matter jurisdiction over actions against a foreign state that raise a federal question under section 1331, an "outcome [that] is precisely the opposite of the removal statutes' intent." Opp'n 8.

I agree with the plaintiffs that section 1441(d) is the exclusive basis for removing actions against foreign states. The Supreme Court requires that district courts apply the FSIA in every action against a foreign state. *See Verlinden*, 461 U.S. at 493-94. The only two statutory provisions that confer subject matter jurisdiction over an action against a foreign state and allow removal of that action are in the FSIA. *See* 28 U.S.C. §§ 1330(a), 1441(d). Therefore, section 1441(a) does not enable Bi to remove. Rather, the only means for removing this action to federal court is section 1441(d), which provides that an action brought against a foreign state court "may be removed by the foreign state" to federal court. The provision does not reference non-sovereign defendants. The FSIA's removal provision is designed to assure foreign states access to a federal

14

forum and to guarantee foreign states the right to remove an action from a state court to a federal court. *See Verlinden*, 461 U.S. at 489. The parties have not pointed to any case that indicates that Congress intended to provide similar assurances for non-sovereign defendants in actions brought against foreign states.

Moreover, I disagree with Bi that minimal diversity between the parties and the presence of a foreign state is sufficient to allow a non-sovereign defendant to remove the action under sections 1330 and 1441(a). The Ninth Circuit's *Teledyne* decision is on point. Although Bi is correct that part of *Teledyne*'s holding is that only minimal diversity is required for a district court to have subject matter jurisdiction over an action brought against a foreign state, it matters whether the foreign state removes the case. In *Teledyne*, an instrumentality of a foreign state removed an entire action to federal court under section 1441(d). The Ninth Circuit found this proper, reasoning that Congress intended that foreign states be exempt from the usual diversity requirements. *Teledyne*, 892 F.2d at 1407-08; *see also* H.R. No. 94-1487, 1976 WL 14078, at *32 ("[section 1441(d)] permits the removal of any such action at the discretion of the foreign state, even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the States in which the action has been brought").

Bi is not a foreign state and section 1441(d) is unavailable to him. As in *Martinez*, only the PRC or its "instrumentalities" can remove this action to federal court. *See EIE Guam Corp.*, 322 F.3d at 639. Because only Bi attempted to remove the action and DCAB has not sought removal, the FSIA does not allow Bi to remove this case.

## II. ATTORNEY'S FEES AND COSTS

Where a plaintiff successfully obtains an order remanding an action to state court, the court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The court has "wide discretion" under section 1447(c). *Moore v. Permanente Med. Grp, Inc.*, 981 F.2d 443, 447 (9th Cir. 1992). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In the Ninth Circuit, attorney's fees and costs can be awarded if removal "was

15

wrong as a matter of law," *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 864 (9th Cir. 2003), even if the defendant's removal was "fairly supportable," *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

The plaintiffs argue that they are entitled to attorney's fees and costs because each of Bi's asserted bases for removal was objectively unreasonable and wrong as a matter of law, even if fairly supportable. Br. 9-10 (citing *Ansley*, 340 F.3d at 864; *Balcorta*, 208 F.3d at 1106 n.6). Bi's references to Guan's residence, but not his citizenship, "demonstrated knowledge that the diversity jurisdiction requirements were not satisfied." Br. 10. The plaintiffs also contend that Bi ignored their repeated explanations that Bi's other asserted bases, sections 1441(a) and 1441(d), were inapplicable. Br. 10. The plaintiffs claim that they have reasonably incurred more than $30,000 in attorney's fees and $2,500 in costs to prepare this Motion, Reply, and supporting documents. Chao Decl. ¶¶ 7-9.

Bi maintains that the two Ninth Circuit cases cited by the plaintiffs in support of their request—*Ansley*, 340 F.3d 858; *Balcorta*, 208 F.3d 1102—are no longer good law because they "applied a more lenient standard for the award of fees under [section] 1447(c) than was set forth by the Supreme Court in *Martin*." Opp'n 9. Moreover, Bi argues that the plaintiffs' "arbitrary cut-off of the parties' pre-motion discussions" and refusal to provide any information about Guan's citizenship status weighs against an award of fees or costs. Opp'n 9.

Regardless of whether Bi was "wrong as a matter of law," I conclude that Bi's removal was not objectively unreasonable. First, no federal court in the Ninth Circuit has addressed the effect of the 2011 amendment on the diversity jurisdiction statute. Second, the Ninth Circuit has not provided a definitive answer to the question of whether a non-sovereign defendant may remove an action using a combination of section 1330 of the FSIA and section 1441(a). The only case that appears to provide a direct answer to this question is from the Southern District of Florida. Bi cited several authorities that arguably support his removal motion. The motion was not baseless. An award of fees and costs is unwarranted.

**CONCLUSION**

For the reasons above, the Court does not have subject matter jurisdiction over this action under either the diversity jurisdiction statute or the FSIA:  the parties are not completely diverse and Bi, as an individual rather than a foreign state, lacks the ability to remove the action to federal court.  Accordingly, the motion to remand this case to the Superior Court of California for the County of Alameda is GRANTED, and the Clerk is directed to transfer the case accordingly.

Because Bi's removal was not objectively unreasonable, the motion for attorney's fees and costs is DENIED.

**IT IS SO ORDERED**.

Dated: March 6, 2014

WILLIAM H. ORRICK
United States District Judge